**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:17-cv-00244-MR**
**[CRIMINAL CASE NO. 1:14-cr-00004-MR]**

| | |
|---|---|
| **ROBERT MAILLET,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | <u>**MEMORANDUM OF**</u> |
| **vs.** ) | <u>**DECISION AND ORDER**</u> |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Petitioner's Motion under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [CV[1] Doc. 1].

## I.    BACKGROUND

The Petitioner Robert Maillet engaged in the trading and receipt of child
pornography on an international photo-sharing website.    [CR Doc. 14:
Factual Basis at ¶ 1].    He created profiles on this website of
"WELLENDOWED" and "LOLIGIRL22."  [Id. at ¶ 2].  Under the LOLIGIRL22
profile, the Petitioner posted an album entitled "Girls to dream about" that

_____

[1] Because this Memorandum and Order must reference documents contained on the
docket in both Petitioner's civil case and his criminal case, the Court will cite to documents
from the Petitioner's civil case with the prefix "CV."  The Court will cite to documents from
the Petitioner's criminal case with the prefix "CR."

contained photographs of girls from 3 to 13 years old, some of whom were dressed in bikinis or underwear. [Id.]. The Petitioner commented on the album, stating: "These are nieces, friend's kids, neighbors, etc. Feel free to comment however you would like, dirty is fine, but in English." [Id.]. Other users posted sexual comments about the photos and requested to trade photos. [Id.]. The Petitioner also posted an album entitled, "Girl on my street," which showed pictures taken from a window of his home of a girl who lived in his neighborhood. [Id. at ¶ 3]. Another album he posted showed prepubescent girls in sexually suggestive poses, including a nude 5 to 9-year-old girl. [Id. at ¶ 4].

After Homeland Security Investigations (HSI) agents linked the Petitioner's LOLIGIRL22 profile to his home address, agents executed a search warrant on November 22, 2013. [Id. at ¶ 6]. The Petitioner agreed to be interviewed and admitted that he created and used the LOLIGIRL22 and WELLENDOWED profiles, that he visited the "kids" section of the photo-sharing website, and that he used the website to view images of children in bikinis, underwear, and in the nude. [Id. at ¶ 7]. The Petitioner also admitted that he had posted images to the website and had received images of child pornography and videos from other users of the website via email. [Id.].

2

Agents seized numerous computers, storage devices, and other electronic media. [Id. at ¶ 6]. HSI Detective William Meadows conducted a forensic analysis of the devices seized from the Petitioner's home. [Id. at ¶ 8]. On one Acer laptop computer, Meadows found email addresses connecting the computer to the Petitioner, searches using terms to obtain child pornography, visits to the targeted photo-sharing website, as well as 318 individual images of child pornography. [Id. at ¶ 8(a)]. The Petitioner had edited photos of two girls to make a .gif file that showed him moving his penis back and forth so that it looked like he ejaculated into their mouths. [Id.]. Screen-capture software that the Petitioner used to record his computer desktop showed a video of the Petitioner downloading child pornography and saving it to his computer. [Id.]. Meadows found 3,442 individual images of child pornography on a thumb drive. [Id.]. On a Western Digital hard drive, Meadows found video screen captures of the Petitioner browsing the internet, logging into the targeted website, searching for images of naked underage girls, and saving these images to his computer. [Id. at ¶ 8(b)]. Meadows found 17,058 individual images of child pornography on this hard drive, as well as 43 movies depicting child pornography, including one video that ran for 38 minutes. [Id.].

One of the Petitioner's email accounts showed an email that he received stating, "Been gone for ahile and I'm back updating my list…looking for hc or extreme vids..and black kids… no response in 3 days you will be deleted from my contacts..I like it all..even with their pets."  [Id. at ¶ 8(c) (typographical errors in original)].  Attached to the email were two videos of child pornography.  [Id.].  The Petitioner responded, "see what I can do." [Id.].  Including another three video files found through forensic examination of the Petitioner's thumb drive, the Petitioner had 24,268 images depicting child pornography.  [CR Doc. 25: PSR at ¶¶ 9-13].

A grand jury indicted the Petitioner, charging that between May 12, 2013, and November 27, 2013, he had knowingly received child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count One); that between October 19, 2013, and November 1, 2013, he had knowingly received child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count Two); and that on November 26, 2013, he had knowingly possessed or accessed with intent to view child pornography, in violation of U.S.C. § 2252A(a)(5)(B) (Count Three).  [CR Doc. 6: Indictment].  Assistant Federal Public Defender Fredilyn Sison was appointed to represent the Petitioner.

The Petitioner entered into a written Plea Agreement with the Government, pursuant to which he agreed to plead guilty to Counts One and

4

Three, in exchange for the dismissal of Count Two. [CR Doc. 13: Plea Agreement at ¶¶ 1-2]. As part of this plea agreement, the parties agreed to jointly recommend that the following guidelines be applied: a base offense level of 22; a two-level enhancement for material involving prepubescent minors; a four-level enhancement for material portraying sadistic conduct or violence; a two-level enhancement for use of a computer to transmit the material; a five-level enhancement because more than 600 images were involved; and a three-level reduction for acceptance of responsibility. [Id. at ¶ 8]. The parties further agreed that the Court would decide whether the enhancement for distribution applied and that either party could argue for other enhancements or reductions, as well as seek a departure or variance. [Id.]. The Petitioner agreed to waive the right to contest his conviction or sentence on appeal and in any post-conviction proceeding, with the exception of claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 19-20]. The Petitioner also agreed to pay full restitution to all victims directly or indirectly harmed by his relevant conduct. [Id. at ¶ 9(a)].

The Magistrate Judge conducted a hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. At this hearing, the Petitioner confirmed that he understood the elements of the offenses and that he was

5

pleading guilty because he had in fact committed the acts described in Counts One and Three of the Bill of Indictment. [CR Doc. 46: Plea Tr. at 10-12, 14-16, 18-19, 20]. The Petitioner further confirmed that he understood that the Court had the discretion to order him to pay restitution to any victim of the offenses. [Id. at 18-19]. After the Government summarized the Factual Basis for the plea, the Petitioner testified that he had read the entire Factual Basis and that the facts set forth therein were true and accurate. [Id. at 26-27]. He also signed a certification, stipulating to the truth and accuracy of the Factual Basis. [CR Doc. 17: Certification]. The Petitioner affirmed that his guilty plea was entered into freely and voluntarily and that, outside of the Plea Agreement, no one had made him any promises or threatened him to cause him to plead guilty. [CR Doc. 46: Plea Tr. at 27]. The Petitioner stated that he understood and agreed to the terms in the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id. at 30-31]. Finally, the Petitioner testified that he had had ample time to discuss any possible defenses with his attorney and that he was "entirely satisfied" with her services. [Id. at 31-32]. The Magistrate Judge accepted the Petitioner's guilty plea, finding that it was knowingly and voluntarily made. [Id. at 33].

The Petitioner agreed to forfeit the following items: a Western Digital hard drive; two Acer laptops; two Western Digital hard drives SN; three

6

Maxtor hard drives SN; two Seagate hard drives SN; and a PNY 30gb thumb drive.  [Id. at 34].  In so doing, the Petitioner confirmed that he owned these items and that they were his personal property.  [Id.].

In preparation for sentencing, a probation officer prepared a presentence report ("PSR"), recommending the same offense levels and adjustments as set forth in the Plea Agreement, plus a five-level upward adjustment for distribution, for a total offense level ("TOL") of 37.  [CR Doc. 25: PSR at ¶¶ 19-24, 30-32].  The probation officer found that the Petitioner's criminal history category ("CHC") was II, based on the Petitioner's 2005 conviction for aggravated assault with intent to commit a felony, namely, lewd or lascivious molestation committed on a child under 14 years of age.  [Id. at ¶ 37].  The probation officer did not assign any criminal history points for the Petitioner's prior charge of indecent assault and battery on a child over 14 years of age for which the Petitioner completed four years of probation without an imposition of adjudication.  [Id. at ¶ 35].  Based on a TOL of 37 and a CHC of II, the probation officer calculated a Guidelines range of 235 to 293 months' imprisonment.  [Id. at ¶¶ 38, 69].

The Petitioner's counsel objected to the PSR, arguing that the applicable Guidelines range should be 235-240 months because possession of child pornography is a lesser included offense of receipt of child

pornography and that sentencing him to more than the 20 year maximum term of imprisonment for that charge would violate the Double Jeopardy Clause. [CR Doc. 24: Obj. to PSR]. The Government responded that there was no double jeopardy violation because the Petitioner pled guilty to possession of images distinct from those that he had received. [CR Doc. 28: Response to Obj.]. Defense counsel also filed a sentencing memorandum, requesting a sentence below the Guidelines and citing the Petitioner's own childhood history of sexual and physical abuse. [CR Doc. 27: Sent. Memo.].

At the sentencing hearing, the Petitioner reaffirmed that the answers he gave during the Rule 11 hearing were true; that he would give the same answers if asked those questions again; and that his guilty plea was voluntary. [CR Doc. 43: Sent. Tr. at 4-5]. The Petitioner stipulated to the Factual Basis, as well as to the PSR. [Id. at 6]. He confirmed that he had reviewed the PSR with his attorney and understood it. [Id. at 7-8]. The Petitioner also stipulated to paying $3,000 in restitution for a victim from the "Marine Land" series of images. [Id. at 14]. The Court raised an issue regarding the statutory range of imprisonment in light of the Petitioner's prior conviction for indecent assault and battery on a child over 14 years old and continued the hearing so that this issue could be addressed. [Id. at 8-10, 15].

8

At the continuation of the sentencing hearing, the Court overruled the double jeopardy objection, finding that Count One applied to some images and that Count Three applied to other images, so Count Three was not a lesser included offense of Count One. [CR Doc. 44: 2d Sent. Tr. at 11]. This Court also determined that the Petitioner's prior conviction for indecent assault and battery on a child was not a qualifying offense, so the enhanced mandatory minimum did not apply. [Id. at 18-20]. The Court adopted the PSR, finding that a guidelines range of 235 to 293 months applied. [Id. at 20-21].

The Petitioner's counsel argued that many of the enhancements for child pornography, such as sadomachism, prepubescent images, and use of a computer, almost always applied, and that the number of images was dependent on the amount of storage space a computer had, so these characteristics were not specific to the Petitioner as an individual. [Id. at 21-22]. Counsel asked the Court to consider the other people that he had sentenced who had these enhancements and to prevent unwarranted sentencing disparities. [Id. at 22]. She argued that despite the abuse the Petitioner had suffered as a child, he had managed to get an education and had the support of his fiancée and friends. [Id. at 22-24]. Counsel argued that, even if the Petitioner received a ten-year sentence, he would be almost

9

70 years old by the time he was released, that older people are less likely to be recidivists, and that he would still be on supervised release for the rest of his life.  [Id. at 24, 26].  She also asserted that despite the Court's ruling on the double jeopardy issue, the Court should not aggregate the sentences for the two offenses.  [Id. at 24-25].  She noted that the Court had sentenced other offenders to between five and 17 and a half years and asked the Court not to sentence him to anything more than ten years.  [Id. at 25-26].

The Government argued for a 240-month sentence, citing the Petitioner's predatory behavior toward children, including hands-on conduct, as well as the fact that he had not been deterred by his prior encounters with the criminal justice system.  [Id. at 26-28].  In addition to possessing pornography, the Petitioner participated in the child pornography "community" by posting images and emailing with other members.  [Id. at 28].  The Government also argued that the evidence showed that age was unlikely to reduce the Petitioner's likelihood of being a recidivist.  [Id.].

The Petitioner addressed the Court, stating that he would do "whatever is necessary," including psychological analysis or counseling, in order to move forward, and that he was "sorry for everything that I have ever done that might be considered wrong."  [Id. at 34, 35].

The Court imposed a 148-month sentence on both counts, to run concurrently. [Id. at 35]. In fashioning the Petitioner's sentence, the Court noted that it did not find the Guidelines particularly helpful and that it was basing the sentence on the Petitioner's individual characteristics, finding that he fell somewhere between a possessor of child pornography and a producer. [Id. at 35-37]. The Court noted as aggravating factors the Petitioner's prior contact offense, the sadistic nature of some of the images, and the quantity of images. [Id. at 36-37]. The Court recommended that the Petitioner participate in sex offender and mental health treatment programs, if eligible, and ordered him to pay $3,000 in restitution. [Id. at 38, 42]. The Court also imposed a life term of supervised release, required the Petitioner to register as a sex offender, and included as additional conditions that the Petitioner submit to a mental health evaluation and treatment program under the guidance of the Probation Office; that the Petitioner submit to a psychosexual evaluation by a qualified mental health professional and complete any treatment recommendations; and that the Petitioner refrain from using or purchasing a computer that could be linked to the internet without approval by a probation officer. [Id. at 38-41].

11

The Petitioner appealed, and attorney Lisa Costner was appointed to represent him on appeal. [CR Docs. 35, 41]. Costner filed an Anders[2] brief and a supplemental brief, asserting that the Petitioner's charges subjected him to double jeopardy. United States v. Maillet, 668 F. App'x 488, 489 (4th Cir. 2016). The Petitioner also filed a *pro se* supplemental brief. Id. The Government moved to dismiss the appeal as barred by the waiver in the Petitioner's Plea Agreement. Id. On July 26, 2016, the Fourth Circuit granted the Government's motion to dismiss, holding that the Petitioner's waiver was "valid and enforceable." Id. The Fourth Circuit issued its mandate on September 26, 2016. [CR Doc. 50].

The Petitioner timely filed the present motion to vacate in August 2017, asserting a number of claims of ineffective assistance of counsel. [CV Doc. 1]. He also filed a motion to amend in November 2017, adding a number of factual and legal contentions to his claims. [CV Doc. 4]. The Government filed a response to the Petitioner's amended motion [CV Doc. 7], and the Petitioner filed a reply [CV Doc. 12]. In April 2020, the Petitioner filed a "Notice of Supplemental Authority to Movant's § 2255 Motion to Include New Supporting Cases Advancing Precedence" [CV Doc. 16].

---

[2] Anders v. California, 386 U.S. 738 (1967).

Having been fully briefed, this matter is ripe for disposition.

## II.  STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief.  After having considered the record in this matter, the Court finds that this matter can be resolved without an evidentiary hearing.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.  DISCUSSION

### A.  Ineffective Assistance of Counsel Standard

Under the Sixth Amendment, a criminal defendant has the right to effective assistance of counsel. U.S. CONST. amend. VI. In order to challenge a conviction based on the ineffective assistance of counsel, a petitioner has the burden of establishing that: (1) defense counsel's performance was deficient, in that counsel's "representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms," and (2) the petitioner suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

13

In order to establish prejudice, a petitioner must demonstrate there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In the context of a claim of ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence. See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 669. It is not sufficient to show the mere "'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). In considering the prejudice prong, a court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). If a petitioner fails to conclusively demonstrate prejudice, the Court need not consider the performance prong. United States v. Terry, 366 F.3d 312, 315 (4th Cir. 2004).

14

**B.     Claims of Ineffective Assistance of Trial Counsel**

**1.     Claims of Pre-Plea Ineffective Assistance**

The Petitioner argues that trial counsel should have verified the authenticity of the search warrant and should have investigated whether someone was colluding with the head investigator of the Department of Homeland Security.  He further contends that trial counsel should have negotiated a better plea agreement.  [CV Doc. 1 at 4-5; CV Doc. 4 at 2-3].

"When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010) (citation omitted). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea.  See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983).  A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

15

Here, the record establishes that the Petitioner's guilty plea was knowingly and voluntarily made, and the Fourth Circuit recognized as much when it upheld the validity of his appeal waiver. Because all of these claims are non-jurisdictional and concern pre-plea conduct by counsel, the Petitioner waived such claims by knowingly and voluntarily pleading guilty.[3] See Fields, 956 F.2d at 1294-96.

Even if such claims were not waived, they would be dismissed as being without merit. First, the Petitioner offers no evidence to suggest that the warrant was defective. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations). In fact, the warrant on which the search was based provided ample evidence connecting internet service and activity from the Petitioner's residence to a child pornography website where the user of that IP address had posted albums containing various images of prepubescent females, as well as sexually explicit comments. [See Case No. 1:13-mj-00063, Doc. 3-1: Application for Search Warrant]. Because there is no evidence in the record that the search warrant was defective, the

---

[3] Although the Petitioner suggests in his motion to vacate that counsel pressured him to sign the Plea Agreement, [see CV Doc. 1 at 4-5], he does not argue that his guilty plea was involuntary or that, but for counsel's actions, he would have proceeded to trial.

16

Petitioner has not met his burden to show deficient performance or prejudice. See Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) (holding that a petitioner cannot establish prejudice unless he proves that the "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence").

As for the Petitioner's claim that counsel failed to investigate collusion between DHS and others, this claim is vague and conclusory. The Petitioner does not identify any of the people allegedly involved, nor does he provide any evidence of collusion. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (holding petitioner could not establish ineffective assistance based on failure to investigate and call additional witnesses where he did not set forth what an adequate investigation would have revealed). Accordingly, this claim is dismissed.

Similarly, the Petitioner's contention that trial counsel should have negotiated a more favorable plea agreement is conclusory and speculative. In any event, however, the Petitioner cannot show deficient performance or prejudice. Counsel was able to negotiate the dismissal of one of the counts against the Petitioner, managed to preserve the right to argue for a departure or variance from the guidelines range, and obtained a three-level reduction for acceptance of responsibility. There is no evidence that counsel could

17

have negotiated a better plea agreement, particularly given the overwhelming evidence against the Petitioner.  See Weatherford v. Bursey, 429 U.S. 545, 561 (1977) (recognizing that plea bargaining is matter of prosecutorial discretion); United States v. Santiago, 632 F. App'x 769, 773-74 (4th Cir. 2015) (determining defendant was not prejudiced by pleading guilty where this resulted in his receiving a shorter term of imprisonment). Accordingly, this claim is also dismissed.

### 2. Claim that Counsel was Ineffective for Failing to Seek Dismissal of Indictment

Next, the Petitioner contends that trial counsel was ineffective for failing to move to dismiss the Indictment.  Specifically, he argues that the charges of possession and receipt of child pornography were multiplicitous[4] and subjected him to double jeopardy.  [CV Doc. 1 at 2, 8-12].

"Multiplicity is the charging of a single offense in several counts." United States v. Fall, -- F.3d --, 2020 WL 1647190, at *6 (4th Cir. Apr. 3, 2020) (internal quotation marks and citation omitted).  The Double Jeopardy

---

[4] In his motion, the Petitioner refers to the counts in the Indictment as being "duplicative." [CV Doc. 1 at 12].  Duplicity, however, involves joining two or more separate offenses in a single count.  See United States v. Burns, 990 F.2d 1426, 1438 (4th Cir. 1993). Because the Petitioner argues that the Indictment was defective because it charged with a single offense in two different counts, the Court assumes that the Petitioner intended to argue that the Indictment was multiplicitous.  See id.

Clause of the Fifth Amendment prohibits the charging of multiple crimes that "are in law and in fact the same offense." United States v. Schnittker, 807 F.3d 77, 81 (4th Cir. 2015) (quoting United States v. Crew, 538 F.2d 575, 577 (4th Cir. 1976)).

Here, the Petitioner's counsel argued at sentencing that charging the Petitioner with the two offenses of possession and receipt violated Double Jeopardy. As this Court found, however, the images on which the two offenses are predicated were different. See Schnittker, 807 F.3d at 82-83 (4th Cir. 2015) (recognizing that no double jeopardy violation occurs as long as a possession offense is based on a distinct image from a receipt offense); United States v. Mason, 532 F. App'x 432, 436-37 (4th Cir. 2013) (rejecting multiplicity challenge where possession and receipt charges were predicated on distinct conduct). The Factual Basis identified two distinct instances of receipt when the Petitioner received emails containing images of child pornography. [CR Doc. 14: Factual Basis at ¶ 8(c)]. There also were screen capture videos that showed the Petitioner downloading child pornography. [CR Doc. 25: PSR at ¶ 8(a)(iii)(2), (b)(i)]. Additionally, there were a number of images of child pornography that the Petitioner possessed for which evidence of receipt did not exist. [CR Doc. 44: 2d Sent. Tr. at 6-9]. Because the two offenses involved distinct conduct and images, the Indictment was

19

not mulitplicitous, and the Petitioner cannot show deficient performance or prejudice based on counsel's failure to move to dismiss the charges set forth therein on that basis.

### 3. Claim of Ineffective Assistance for Failing to "Object Strongly" to Number of Images

Next, the Petitioner argues that his trial counsel should have required the computer expert to be present at his sentencing hearing, that counsel should have explained to this Court the difference between "instances," "images," and "actual count," and that counsel should have argued that the number of images needed to be determined by a jury, rather than through the PSR. [CV Doc. 1 at 13, 16-18, 22]. He contends that, during pre-plea discussions, the computer expert had asked counsel whether the difference between 3,000 and 24,000 images made a difference, and counsel had responded, "no." [Id.]. The Petitioner further asserts, without support, that the computer expert determined that the majority of the images were "not attributable" to the Petitioner and that not all of the images for which he was ultimately held responsible were found on his computer. [Id. at 5]. He further speculates as to whether the number of "instances" could have been reduced and contends, without support, that "since a jury did not make this decision, the least amount must stand, which would be three or none." [Id. at 14]. The

Petitioner further contends that he owned only the two laptop computers and that the other electronics in his room had been abandoned by an ex-housemate of his. [Id. at 14-15].

Here, the certified Factual Basis and the uncontested PSR supported the Court's finding that the Petitioner's offenses involved over 24,000 images of child pornography. [See CR Doc. 14: Factual Basis at ¶ 8; CR Doc. 25: PSR at ¶¶ 9-13]. The Petitioner stipulated to the Factual Basis, including the number of images for which he was responsible. The Petitioner's current attempts to disclaim the electronic equipment he possessed and the number of images at issue are in direct contradiction to his prior, sworn representations to this Court in which he admitted his guilt and stipulated to the Factual Basis. Statements made by a defendant under oath at a plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005).

The Petitioner's contention that a jury should have determined the number of images is entirely without merit. So long as the Court considers the guidelines range advisory and does not find facts that would increase a

sentence above the statutory maximum, the Court may find facts by a preponderance of the evidence. United States v. Benkahla, 530 F.3d 300, 312 (4th Cir. 2008). Such findings do not violate the Sixth Amendment. See id.; United States v. Battle, 499 F.3d 315, 322-23 (4th Cir. 2007). As noted above, the certified Factual Basis and the uncontested PSR supported the finding that the Petitioner's offenses involved over 24,000 images of child pornography. Under the Guidelines, the five-level enhancement for the number of images involved in the offense required a finding of only 600 images. U.S.S.G. §§ 2G2.2(b)(7). The number of images found by the Court to be involved in the Petitioner's offenses did not impact his statutory range of punishment, so the Petitioner's Sixth Amendment rights were not violated. See 18 U.S.C. § 2252A(b)(1) (5-20 years of imprisonment), (b)(2) (not more than 20 years of imprisonment). For these reasons, the Court concludes that the Petitioner has not met his burden to show that trial counsel's failure to challenge the number of images or to request a jury determination of this issue was deficient, or that he was prejudiced thereby. This claim, therefore, is dismissed.

### 4. Other Sentencing Claims

The Petitioner argues that he should not have to register as a sex offender, and he contends that the Sex Offender Registration and

Notification Act (SORNA) is unconstitutional because it violates the Necessary and Proper Clause, as well as the Commerce Clause and because it is unconstitutionally vague. [CV Doc. 1 at 27; CV Doc. 4 at 6-8]. The Petitioner further contends this Court erred in awarding him three criminal history points because it should have applied the categorical approach, and that, under the least culpable portion of the state statute under which he was convicted, an offense would have been a misdemeanor. [CV Doc. 4 at 12].

Because the Petitioner attempts to raise these issues directly, rather than as ineffective assistance claims, they are barred by the appellate waiver in his Plea Agreement. [CR Doc. 13: Plea Agmt. at ¶¶ 19-20]. As such, these claims are dismissed.

### 5. Claim of Ineffective Assistance Based on Failure to Object to Restitution

The Petitioner argues that trial counsel should have objected to his having to pay restitution, as well as to the amount of restitution imposed. [CV Doc. 1 at 5, 29-31, 34].

Because restitution is a financial penalty, not a physical constraint on liberty, the Petitioner may not challenge the order of restitution in a § 2255 proceeding. See United States v. Hudgins, 201 F. App'x 142, 143 (4th Cir.

23

2006) (per curiam). The fact that the Petitioner is alleging ineffective assistance with respect to restitution does not change this result, because he is still seeking to challenge a non-custodial restitution order. See Kaminski v. United States, 339 F.3d 84, 85 n.1 (2d Cir. 2003) (recognizing that, even if defendant could show ineffective assistance with respect to restitution, the district court lacked subject matter jurisdiction to grant relief under § 2255). Thus, the Petitioner's claim that his counsel provided ineffective assistance with respect to the order of restitution is hereby dismissed.

### 6. Claim of Ineffective Assistance at Sentencing

Next, the Petitioner argues that trial counsel was deficient because her request for a sentence of no more than 120 months "blocked" the Court from further reducing his sentence. [CV Doc. 1 at 36]. He further contends that he asked counsel to request a sentence of 36-48 months but that she failed to do so. The Petitioner contends that a sentence of 36 to 48 months would have been sufficient for a possession offense. [Id. at 36, 38-39].

The Petitioner's arguments are without merit. The Petitioner's conviction on Count One carried a five-year mandatory minimum sentence, so trial counsel had no basis for arguing that he should receive a sentence below five years. Counsel's request for a sentence of no more than ten

24

years—when the Guidelines range was from 235 to 293 months of imprisonment—was not deficient and did not prejudice him. Counsel's advocacy persuaded the Court to vary downward from the Guidelines by over seven years. Accordingly, the Petitioner has not shown that counsel's performance was deficient in this regard or otherwise prejudiced him. This claim therefore is dismissed.

### 7. Claim of Ineffective Assistance for Failing to Object to Supervised Release Term

Next, the Petitioner argues that trial counsel should have objected to the life term of supervised release, as well as to the conditions imposed restricting his access to the internet and requiring him to undergo counseling. [CV Doc. 1 at 24-25, 28-35, 40]. He contends that because he is 61 years old, he is unlikely to reoffend. [Id. at 41]. Further, the Petitioner contends that he does not need counseling and that requiring him to undergo such treatment would only "further stigmatize" and punish him and "impede[ ] his return to society and to have a chance at a normal life." [Id. at 35].

A lifetime term of supervised release is authorized and recommended for sex offenders. U.S.S.G. § 5D1.2(b). Participation in treatment programs and limitations on computer usage also are recommended for sex offenders under the Sentencing Guidelines. See U.S.S.G. § 5D1.3(d)(7). Courts have

25

routinely upheld such limitations.  See, e.g., United States v. Mixell, No. 18-4563, 2020 WL 1563322, at *3 (4th Cir. Apr. 1, 2020) ("Special conditions involving limitations on computer use or required computer monitoring have been upheld when the defendant has a history of using a computer or the Internet to commit present or prior crimes."); United States v. Granger, 117 F. App'x 247, 248-49 (4th Cir. 2004) (recognizing restriction on possession or use of computer during supervised release was not overly broad); United States v. Carpenter, 803 F.3d 1224, 1239 (11th Cir. 2015) (recognizing that "our cases have uniformly upheld conditions prohibiting defendants convicted of sex offenses from accessing a computer or the Internet for the duration of their supervised release").

Here, this Court carefully considered the § 3553(a) factors and imposed conditions of supervised release that were tailored to the Petitioner's history and characteristics, as well as the need to protect the public.  [CR Doc. 44: 2d Sent. Tr. at 38-41].  Counsel's failure to object to the terms of supervised release did not fall below an objective standard of reasonableness, and the Petitioner has not shown that this prejudiced him because there was a reasonable probability that he otherwise would have received a lower sentence. Therefore, his claim that his counsel was

ineffective for failing to object to the term of supervised release and the conditions imposed is hereby dismissed.

### C.    Claims of Ineffective Assistance of Appellate Counsel

The Petitioner argues that his appellate counsel never contacted him and that he only discovered that counsel had filed an Anders brief when he received it from the Court of Appeals.  [CV Doc. 1 at 43-44].  He further contends, albeit in a conclusory fashion, that counsel should have challenged on appeal the length of his sentence, as well as the term of supervised release.  [Id. at 44].

Courts ordinarily find ineffective assistance for failure to raise claims on appeal only when "ignored issues are clearly stronger than those presented."  Smith v. Robbins, 528 U.S. 259, 288 (2000) (internal citation and quotation marks omitted). Appellate counsel is not required to assert all non-frivolous issues on appeal.  Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985).  Rather, "it is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues. Smith v. Murray, 477 U.S. 527, 536 (1986).  Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).  The petitioner still bears the burden to show that there is a reasonable probability

27

that but for counsel's failure to raise an issue on appeal, the result of the proceeding would have been different, i.e., he would have prevailed on appeal.  See Robbins, 528 U.S. at 285-86.

While the Petitioner contends that appellate counsel should have challenged the length of his sentence and the term of supervised release imposed, such issues would have clearly been barred by the appellate waiver provision in his Plea Agreement.  Thus, even if counsel had raised these claims, the Petitioner cannot show prejudice because these claims would have been deemed waived and thus dismissed.  The Petitioner's claim that appellate counsel provided ineffective assistance is without merit and is therefore dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Petitioner's motion to vacate is denied and dismissed.    The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right.  See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)).  The Petitioner has failed to demonstrate both that this

28

Court's dispositive procedural rulings are debatable, and that the motion to vacate states a debatable claim of the denial of a constitutional right.  Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).  As a result, the Court declines to issue a certificate of appealability.  See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence [CV Doc. 1] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: April 20, 2020

Martin Reidinger
United States District Judge

29